UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLARD OWENS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:03CV52 RWS |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This case arises out of the demolition of a vacant school building by the City of St. Louis in 2000.

Plaintiff Willard Owens alleges that the City of St. Louis interfered with his rights in the property when it caused the building to be demolished. Owens claims that he has standing to bring this action based on a land contract he allegedly entered in 1993 to purchase the property. His lawsuit claims that the City of St. Louis's action violated his procedural due process rights and his rights under the Takings Clause of the United States Constitution. In addition he has brought a state claim for inverse condemnation.

Claudette Hayes and Carole Pugh have intervened as plaintiffs in this case alleging that Owens has no interest in the property because they, not Owens, are the true owners of the property. They have filed a separate intervenor complaint asserting the same claims as Owens against the City of St. Louis. In addition, Hayes and Pugh have filed a cross-claim against Owens for fraud.

The City of St. Louis has moved for summary judgment. Because Plaintiffs were afforded the opportunity to be heard as required by the Constitution regarding the condemnation of the subject property, I will grant summary judgment on the due process claims. The Takings Clause

claims are not ripe because Plaintiffs must first exhaust their claim for inverse condemnation in state court. As a result, I will dismiss the remaining claims in the Complaint.

*Background*

Intervenor Plaintiff Claudette Hayes is the president and owner of the Pentecostal Church of God of Pagedale, a not-for-profit corporation. She inherited the school building at issue here from her parents.

In 1982, Hayes' parents purchased the school building located at 5827 Harney Avenue in St. Louis, Missouri, from the Catholic Archdiocese of St. Louis. It is the demolition of this former school building that is the subject of this lawsuit. From 1982 to 1989 Hayes operated a school in the building. On September 1, 1989, Hayes executed a general warranty deed that transferred ownership of the school building to the Primary Education Institute (PEI). PEI was the name of a school to be housed in the building. The address for the Primary Education Institute listed on the deed is 512 South Hanley Road, Suite 6. Hayes testified at her deposition in this case that although the building was transferred to PEI, that entity was part of the Pentecostal Church and it was not her intention to change the ownership of the building by executing the deed. Intervenor Plaintiff Carole Pugh is identified in the deed as the president of PEI. Pugh's signature appears on the deed. The deed was filed with the recorder of deeds.

Pugh is a friend of Hayes. Pugh operates a school in California. She and Hayes discussed creating the Primary Education Institute and that Pugh would be the Institute's president. Pugh stated in her deposition that the project never proceeded beyond the planning stages and, although she was the president of PEI, she never performed any duties for that entity. She also asserts that she did **not** sign, or authorize anyone to sign on her behalf, the warranty deed that transferred the title of the building to PEI. Pugh does **not** claim any interest in the school building property.

In her deposition, Hayes testified that PEI operated a school in the building from 1990 to 1992. The building stood vacant from approximately 1993 until September of 2000 when the building was demolished.

Plaintiff Willard Owens was a friend of Hayes. Owens and Hayes met in 1989. Sometime in 1993, Owens placed his real estate sales license with Hayes' real estate company. Owens was involved with Hayes in various real estate transactions during the next five years.

Owens claims that he entered into a real estate land contract on May 1, 1993, with the Primary Education Institute to purchase the school building property at issue here. He claims that he paid thousands of dollars under the contract up until the time that the property was demolished in 2000. Intervenor Plaintiff Pugh's signature appears at the bottom of the document as president of the Primary Education Institute. At her deposition Pugh denied any knowledge of this real estate contract and denied that she ever signed it or authorized her signature to be placed on the document. Intervenor Plaintiff Hayes also asserts that she did not know of the existence of the purported land contract between Owens and the Primary Education Institute.

Pugh and Hayes have filed a cross-claim against Owens. In the cross-claim, Pugh and Hayes allege that Owens committed fraud by forging the May 1993 real estate land contract and by holding himself out to the City of St. Louis as having an equitable interest in the school building property.

On May 2, 2000, the Department of Public Safety, Division of Building and Inspection, caused a notice of condemnation to be issued to the Primary Education Institute indicating that the property located at 5827 Harney had been condemned for safety reasons. The condemnation was based on the school building being vacant for the previous twelve months, portions of the fence surrounding the property had collapsed, and numerous areas of the building were open.

The notice was addressed to Carole Pugh as president of the Primary Education Institute and was sent to the address for the Institute listed in the warranty deed executed by Hayes. Hayes testified at her deposition that the address for the Primary Education Institute listed on the warranty deed was a box service that "we used ... for our post office at the time."

On May 5, 2000, a form appeal was filed with the Board of Building Appeals concerning the May 2, 2000, notice of condemnation. The appeal was purportedly filed by Hayes and listed the address of her home at 12054 Gardenlane as the return address. The appeal form indicated that it was filed by the owner's agent. On May 16, 2000, the Board of Appeals sent a notice of a hearing to Hayes at her home address. The hearing took place on June 1, 2000. Owens appeared at the hearing. He told the board that the site was being rehabbed as a charter school and that financing for the project had been secured. On June 6, 2000, the Board of Building Appeals entered a written decision that the appeal was denied with the following stipulation:

> It is the decision of the Board of Building Appeals that this *appeal be denied unless within thirty (30) days* the cyclone fence is secured, all areas and all openings accessible from the ground level be boarded and secured within thirty (30) days from the date of this letter, *and if construction hasn't started by August 1, 2000, the building will be referred to the Demolition Section.* (Emphasis added.)

This decision also was sent to Hayes at her home address. Hayes claims that she never received the original condemnation notice sent to PEI's address, nor did she receive any of the letters sent to her home address by the Board of Building Appeals. Hayes speculates that Owens intercepted all of this correspondence without her knowledge. Hayes claims that she was not aware of the proceedings.

Owens admits that although he fixed the fence and secured the openings to the building, no construction began on the property by August 1, 2000, as was required by the Board of

Building Appeals' decision. On September 10, 2000, the City of St. Louis caused the demolition of the property to commence.

At her deposition, Hayes claims that she knew nothing of the condemnation or the demolition of the property until she drove by the property some time in "2002" and saw that it was being demolished. After seeing that the school building was being demolished she did not inquire with the City of St. Louis regarding why her property was being demolished.

*State Court Lawsuit*

On November 13, 2000, Owens filed a seven count lawsuit in state court against the City of St. Louis, Ronald H. Smith, the City's Building Commissioner, and Martie J. Aboussie, the City's Director of Public Safety. In an order dated September 4, 2002, the state court dismissed several counts against the City of St. Louis but did not grant a dismissal of the inverse condemnation claim against the City. On October 16, 2002, Owens filed a motion to dismiss his remaining claims without prejudice which was granted by the state court.

*Federal Court Lawsuit*

On January 14, 2003, Owens filed the present three count Complaint. In Count I Owens claims that his procedural due process rights under the Fourteenth Amendment to the United States Constitution were violated when the City of St. Louis failed to give him further notice that the property at 5827 Harney was slated for demolition. Count II is a claim that the demolition of the building was a taking of the property for public use without payment of just compensation by the City of St. Louis. It is alleged that the demolition violated the Just Compensation Clause of the Fifth Amendment to the United States Constitution. Count III, alleges a state law claim for inverse condemnation. Like in his previous state court case, Owens sued the City of St. Louis, Ronald H. Smith, the City's Building Commissioner, and Martie J. Aboussie, the City's Director

of Public Safety. The complaint does not identify the capacity in which Smith and Aboussie are sued.

Intervenor Plaintiffs Hayes and Pugh assert that they did not learn of the condemnation and litigation surrounding the school property until April 2004. They moved to intervene in the present lawsuit. I granted their motion to intervene. Hayes and Pugh filed their own Complaint that mirrors Owens Complaint. They also filed a cross-claim against Owens for fraud. Although the cross claim references 42 U.S.C. §§ 1983 and 1988, this claim is purely a state law claim for fraud.

Defendants City of St. Louis, Smith and Aboussie have moved for summary judgment on several grounds.

*Standard of Review*

A district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ..." when considering whether to grant summary judgment. Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)).

The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings

but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Discussion*

Initially I note that Plaintiffs' Complaints do not indicate whether Smith and Aboussie are sued in their individual capacity, in their official capacity, or both. In order to sue public officials in their individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise it will be construed that the public defendants are sued only in their official capacity. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). A suit against public officials in their official capacity is merely a suit against their employer.

Plaintiffs' Complaints do not expressly state that Smith and Aboussie are sued in their individual capacity. As a result, the claims against Smith and Aboussie are brought against them solely in their official capacity.

The City of St. Louis Defendants offer two technical arguments why they should receive summary judgment. First, it argues that Owens' state court case concerning the demolition of the subject property bars the present lawsuit under the doctrine of res judicata. This argument fails because there was never a final judgment entered in the state court case. Second, the City of St. Louis asserts that none of the Plaintiffs have standing to bring this case because none of them owned the subject property at the time that it was demolished. As discussed above, there are many material factual issues in dispute that prevent entry of summary judgment based on standing. The competing claims of ownership, however, need not be determined for purposes of my decision. I assume for purposes of this order only that all the parties had some legal interest in the

property.

Plaintiffs Owens, Hayes, and Pugh assert two federal claims and one state claim. They allege a violation of their rights of procedural due process and under the Takings Clause of the United States Constitution. They also assert a claim for inverse condemnation under Missouri law.

*Procedural Due Process*

The procedural due process claim in this case fails. Plaintiff Owens claims that although he participated fully in the appeal of the condemnation process he should have received an additional notice before the City of St. Louis commenced the demolition of the subject property. In its June 6, 2000, decision, the Board of Building Appeals denied Owens appeal of the condemnation notice. The decision of the Board, however, allowed a brief window for Owens to correct the safety violations at the site. It also required that construction of the proposed charter school on the site had to be commenced by August 1, 2000. The decision further informed Owens that a failure to comply with the outlined conditions would result in a referral of the property for demolition.

Owens represented in his Complaint that he had performed all of the requirements set by the Board including commencement of construction at the site by August 1, 2000. In his deposition, however, he admits that construction had not begun at the property as was required by the Board's decision.[1] Owen asserts that he had a right to an additional notice that the building was slated for demolition based on his failure to comply with the Board's requirements. In support of this contention Owen relies on City of St. Louis Ordinance Number 64771,

---

[1] Owens' testimony which is inconsistent with the representations made in his Complaint raises the issue whether Rule 11 sanctions should be considered against Owens and his counsel for making false statements in their original Complaint.

§ 121.7.3 which outlines the process involved when the Board of Building Appeals enters a conditional decision modifying or reversing an order of the code official.

That ordinance does not apply to this case. The Board of Building Appeals decision specifically denied Owens' appeal of the condemnation order. Although Owens was granted time to attempt to avoid the demolition of the building he admitted that he did not perform a key provision of the Board, that was, to begin the construction of the charter school on the property by August 1, 2000. The Board's decision clearly states that the failure to comply with the requirements would result in a referral of the property for condemnation.

The Procedural Due Process Clause of the Constitution is satisfied when a purported property owner is given an opportunity to present his case and have its merits fairly judged. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). Owens received his opportunity when he presented his appeal to the Board of Building Appeals at the June 1, 2000, hearing. The Board set forth the conditions which would avert the demolition of the subject property and informed Owens of the consequences of his failure to comply. This process satisfied Owens rights under the Procedural Due Process Clause.

Plaintiff Hayes also received the proper opportunity to be heard to which she was entitled under the Procedural Due Process Clause. The City of St. Louis sent its condemnation order and notice of a right to appeal to the address that Hayes caused to be placed on the warranty deed she executed assigning the property to the Primary Education Institute. When an appeal was filed with the Board of Building Appeals in Hayes' name, the Board sent all further correspondence to Hayes' home address. City of St. Louis Ordinance Number 64771, § 121.7.1 states that an appellant shall be deemed to have received the Board's decision three days after it has been placed in the United States mail with proper postage. The City of St. Louis was not required to give

Hayes any further notice of its actions concerning the property. Hayes' mere assertion that she did not receive the notices does not rebut the presumption of receipt when mail is sent and clearly delivered to the correct address.

Pugh's claim of a procedural due process violation cannot survive because of Pugh's own sworn testimony in which she disclaimed any interest in the subject property.

*Takings Claim and Inverse Condemnation*

Plaintiffs Takings Clause claim and inverse condemnation claim cannot be adjudicated in this Court. In order to pursue a Fifth Amendment Takings Clause claim, a plaintiff must first exhaust his state remedies. Kottschade v. Cty of Rochester, 319 F.3d 1038, 1040 (8th Cir. 2003). Missouri has a cause of action for inverse condemnation and that action must be exhausted in state court before a Takings Clause claim can be filed in federal court. Plaintiff Owens invites me, in the interest of judicial economy, to bifurcate this case and rule on the inverse condemnation claim first. I decline to do so because the law requires that this claim must be exhausted in state court. Id. As a result, I will dismiss the claims under the Takings Clause and for inverse condemnation.

Plaintiff Hayes and Pugh have filed cross-claim against Owens for fraud under state law. I decline to exercise supplemental jurisdiction over this claim in light of the fact that the Plaintiffs still need to litigate issues in state court concerning this case. I will dismiss that claim without prejudice.

To conclude, I will grant summary judgment for the City of St. Louis Defendant on the Plaintiffs' procedural due process claims. I will dismiss the takings claim as not ripe for federal adjudication. The claim for inverse condemnation shall also be dismissed because it must be exhausted in state court. Finally, I decline to exercise supplemental jurisdiction over the cross-

claim for fraud brought by Hayes and Pugh.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant City of St. Louis, Ronald Smith, and Martie Abbousie's motion for summary judgment [#66] is **GRANTED** in part as to Plaintiffs' claims of a procedural due process violation. Plaintiffs' claims for a Takings Clause violation and for inverse condemnation are dismissed without prejudice. Plaintiffs Hayes and Pugh's cross claim for fraud against Plaintiff Owens [#64] is also dismissed without prejudice.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of August, 2005.